**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

RAUL VILLAVICENCIO-BURRUEL,
   *Defendant-Appellant.*

No. 09-50204

D.C. No.
3:08-cr-02509-
IEG-1

UNITED STATES OF AMERICA,
   *Plaintiff-Appellant,*

v.

RAUL VILLAVICENCIO-BURRUEL,
   *Defendant-Appellee.*

No. 09-50257

D.C. No.
3:08-cr-02509-
IEG-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
March 2, 2010—Pasadena, California

Filed June 14, 2010

Before: William C. Canby, Jr., Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

8711

**COUNSEL**

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Mark R. Rehe (argued), Mark Conover, Assistant United States Attorneys, United States Attorney's Office, San Diego, California, for plaintiff-appellee and cross-appellant the United States of America.

Kristi A. Hughes, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant and cross-appellee Raul Villavicencio-Burruel.

---

**OPINION**

GOULD, Circuit Judge:

Raul Villavicencio-Burruel ("Villavicencio") was ordered removed in 2006 after proceedings before an immigration judge ("IJ"). After his removal, however, Villavicencio returned to the United States without permission. In 2008, Villavicencio was indicted for illegal reentry following deportation in violation of 8 U.S.C. § 1326, and for making false claims that he had United States citizenship in violation of 18 U.S.C. § 911. He was convicted and sentenced to thirty-three months in custody and three years of supervised release. Villavicencio appeals his conviction and the government cross-appeals the sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the conviction, vacate the sentence, and remand for resentencing.

**I**

In April 2006, Raul Villavicencio was ordered removed to Mexico by an IJ. The IJ ordered Villavicencio removed on the grounds that: (1) a 1999 conviction for spousal battery under California Penal Code section 243(e)(1) was a conviction for

a crime of domestic violence, making him removable under 8 U.S.C. § 1227(a)(2)(E)(i); and (2) a 2004 conviction for violating a court protection order under California Penal Code section 273.6(a) was a conviction for violating a protection order that involved threats of violence, making him removable under 8 U.S.C. § 1227(a)(2)(E)(ii). The IJ determined that, because of a 2005 conviction for making criminal threats under California Penal Code section 422, which the IJ determined to be an aggravated felony, Villavicencio was not eligible for relief of cancellation of removal, voluntary departure, or adjustment of status.

In the process of reaching his conclusions that Villavicencio should be removed and was not eligible for the relief sought, the IJ explained to a group of aliens including Villavicencio that each alien had the right to appeal, stating, "if you do not like the decisions we make, there is a higher court that is called the BIA that reviews the decisions of IJs like myself" but "[o]nce you've waived your right to appeal . . . , you cannot appeal that decision in the future." Villavicencio, through counsel, twice reserved his right to appeal. The IJ's removal order similarly recited that Villavicencio had reserved the right to appeal. But no appeal to the BIA was thereafter pursued. Villavicencio was removed to Mexico on May 2, 2006.

Villavicencio was indicted in July 2008 on one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326 on the basis of Villavicencio's prior removal to Mexico in 2006, and one count of making a false claim to United States citizenship in violation of 18 U.S.C. § 911. Villavicencio filed a motion to dismiss the indictment, contesting the validity of the prior removal on due-process grounds. He argued that neither offense relied on by the IJ was a removable offense. Not having appealed the IJ's removal order to the BIA, Villavicencio argued that he should be excused from 8 U.S.C. § 1326(d)'s exhaustion requirement due to ineffectiveness of his counsel and because the government could not show that Villavicencio validly waived his right to appeal. He

also argued that he was prejudiced by being improperly removed. The district court concluded that Villavicencio did not exhaust his administrative remedies and could not show prejudice. The district court therefore denied the motion to dismiss the indictment on those bases.

At trial, the government called Immigration and Customs Enforcement Agent Patricia Vargas, the custodian for Villavicencio's immigration file, as a witness. Through Agent Vargas, the government introduced a warrant of removal from Villavicencio's file. Villavicencio objected to the warrant's admission on the basis that it violated his rights under the Confrontation Clause because Agent Vargas had neither prepared the warrant of removal nor observed personally Villavicencio's removal. Over Villavicencio's objection, the district court admitted the warrant of removal. Villavicencio was convicted on both counts.

At sentencing, the government sought a sixteen-level enhancement to the advisory United States Sentencing Guidelines ("USSG") calculation pursuant to USSG § 2L1.2 on the ground that Villavicencio's prior conviction under California Penal Code section 422 for making criminal threats was a conviction for a categorical crime of violence. Villavicencio argued that section 422 was not categorically a crime of violence because it reached threats to property and threats to commit crimes that were only potentially capable of causing injury. The district court concluded that a violation of section 422 was not a crime of violence and sentenced Villavicencio to thirty-three months in custody and three years of supervised release. Villavicencio's timely appeal of his conviction and the government's timely cross-appeal of his sentence followed.

## II

**[1]** We review de novo the district court's denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when

the motion is based on an alleged deprivation of due process in the underlying removal proceedings. *United States v. Moriel-Luna*, 585 F.3d 1191, 1196 (9th Cir. 2009). To prevail in a collateral attack on the underlying removal order in a motion to dismiss, Villavicencio must, as a threshold matter, show that he exhausted his administrative remedies. 8 U.S.C. § 1326(d)(1); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

Villavicencio concedes that he did not exhaust his administrative remedies. Villavicencio urges us to excuse his nonexhaustion, however, contending that due process requires that noncompliance with § 1326(d)'s exhaustion requirement will only bar a collateral attack on a prior removal order if the defendant's waiver of the administrative appeal was considered and intelligent. *See Ubaldo-Figueroa*, 364 F.3d at 1048; *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 839-40 (1987) (holding that due process requires judicial review of the underlying deportation proceedings when waiver of the right to appeal was not considered or intelligent). Villavicencio contends that it is the government's burden to demonstrate a considered and intelligent waiver by clear and convincing evidence, *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th Cir. 2004), and that the government cannot meet this burden because there is no evidence in the record that Villavicencio understood his right to appeal and waived it. Villavicencio argues that his counsel's decision not to pursue an appeal cannot be attributed to a considered and intelligent decision made by Villavicencio.[1]

---

[1]Villavicencio also contends that his counsel's alleged ineffectiveness in not appealing the IJ's removal order requires that Villavicencio be permitted to collaterally attack the prior removal order despite his noncompliance with § 1326(d)'s exhaustion requirement. This argument raises the question of whether the logic of *Mendoza-Lopez* and its progeny extend to nonexhaustion due to ineffective assistance of counsel, requiring that a defendant be permitted to collaterally attack the underlying removal order in such a case. We do not decide this issue because Villavicencio has not

**[2]** Villavicencio's waiver argument does not follow, and fails to persuade us. Villavicencio never *waived* his right to appeal to the BIA at all; rather, his counsel expressly *reserved* that right twice during the removal hearing but declined to exercise that right before expiration of the time to appeal. *See* 8 C.F.R. § 1003.39 ("Except when certified to the Board, the decision of the Immigration Judge becomes final upon *waiver of appeal or upon expiration of the time to appeal* if no appeal is taken[,] whichever occurs first." (emphasis added)). The IJ instructed Villavicencio that "if you want to appeal your decision you must . . . reserve your right to appeal. Once you've waived your right to appeal . . . , you cannot appeal that decision in the future." The IJ later asked counsel, "So you're going to reserve appeal[?]" to which counsel responded, "Yes we will." The IJ's removal order was annotated to reflect that Villavicencio had not waived his right appeal: the word "waived" was crossed out from the phrase "Appeal: Waived," and "Reserved by Alien" was handwritten directly below. In light of Villavicencio's and his counsel's unmistakable actions during the removal proceedings, we cannot conclude, as Villavicencio urges, that his and his counsel's actions were tantamount to Villavicencio waiving his appeal rights, much less that there was an ineffective waiver.[2] Because Villavicen-

___

demonstrated ineffective assistance of counsel on this record. Villavicencio introduced neither an affidavit nor any record evidence detailing the purportedly ineffective acts of his counsel. Villavicencio's conclusory, equivocal statement in his brief that "it is *likely* that . . . counsel failed to [pursue an appeal] because of ineffectiveness," (emphasis added), is insufficient under the "highly deferential" standard of review to "overcome the presumption that, under the circumstances, the [decision not to pursue an appeal] might be considered sound . . . strategy." *See Torres-Chavez v. Holder*, 567 F.3d 1096, 1101 (9th Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

[2]Villavicencio cites *United States v. Perez*, 330 F.3d 97 (2d Cir. 2003), for the proposition that when a right is abandoned because of unauthorized actions (or, more accurately, inactions) of counsel, waiver does not occur. *See id.* at 101-03. But in *Perez*, counsel stated at the deportation hearing

cio did not comply with § 1326(d)(1)'s exhaustion requirement, and his waiver argument is inapposite and does not excuse the nonexhaustion, we hold that Villavicencio may not collaterally attack the unexhausted removal order.

## III

**[3]** We review alleged violations of the Confrontation Clause de novo. *See United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 673 (9th Cir. 2009). Villavicencio argues that the warrant of removal is testimonial and that the government's reliance on the warrant to prove that Villavicencio was physically removed from the United States violated his constitutional right to confront an adverse witness. We have previously held that a warrant of removal is nontestimonial and that its admission therefore does not violate the Confrontation Clause. *E.g.*, *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005). Villavicencio contends that *Bahena-Cardenas* and its antecedents were abrogated by the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), which held that "certificates of analysis" stating that a tested substance was cocaine were testimonial and could not be admitted without cross-examination of the document's author. *Id.* at 2531-32, 2540. We disagree that *Melendez-Diaz* abrogates *Bahena-Cardenas*. In *United States v. Orozco-Acosta*, ___ F.3d ___, No. 09-50192, 2010 WL 2089474 (9th Cir. May 26, 2010), we reaffirmed, in light of *Melendez-Diaz*, that warrants of removal are nontestimonial. *Id.* at *3-5. Our panel is bound by our circuit's precedent in

_____

that he "would file" an application for relief and then failed to do so in a timely fashion without informing his client, thus failing to act as competent counsel. *See id.* at 102. Here, Villavicencio's attorney reserved a right of appeal on his client's behalf, but did not state that she would file an appeal. Because the record is silent on whether Villavicencio authorized or directed his attorney to file an appeal, we cannot conclude that the attorney exceeded her authority or failed to act as competent counsel by not pursuing an appeal.

*Orozco-Acosta*. We therefore hold that the admission of the warrant of removal at Villavicencio's trial did not violate his Confrontation Clause rights. Accordingly, his conviction stands.

**IV**

We next address the government's cross-appeal of the sentence.[3] The government in its cross-appeal contends that the district court erred by concluding that Villavicencio's conviction for making criminal threats under California Penal Code section 422 is not categorically a conviction for a "crime of violence" within the meaning of USSG § 2L1.2. Thus, the controlling issue for purposes of the cross-appeal is whether section 422 is a "crime of violence" under USSG § 2L1.2.

To decide this issue we apply the categorical analysis set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *See United States v. Becerril-Lopez*, 541 F.3d 881, 890 (9th Cir. 2008). Under *Taylor*'s categorical approach, "in order for a violation of the state statute to qualify as a predicate offense, the full range of conduct covered by the state statute must fall within the scope of the federal statutory provision." *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010) (internal quotation marks and alteration omitted). To demonstrate that the predicate offense criminalizes conduct outside of the generic definition of a crime of violence, a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

**[4]** The United States Sentencing Guidelines provide for a sixteen-level enhancement if "the defendant previously was

---

[3]We review de novo a district court's determination that a convicted crime is not a categorical "crime of violence" under USSG § 2L1.2. *See United States v. Cortez-Arias*, 403 F.3d 1111, 1114 & n.7 (9th Cir. 2005).

deported . . . after . . . a conviction for a felony that is . . . a crime of violence." USSG § 2L1.2(b)(1)(A)(ii). The comments to the Guidelines explicitly define "crime of violence" to include any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2 cmt. n.1(B)(iii). The United States Supreme Court has clarified that " 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1270-72 (2010) (construing "physical force" as used in 18 U.S.C. § 924(e)(2)(B)(i)). The threatened force required of the predicate crime must therefore be a threat of violent force. *Id.*

California Penal Code section 422 provides:

> Any person who *willfully threatens to commit a crime which will result in death or great bodily injury to another person*, with the *specific intent* that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an *immediate prospect of execution of the threat*, and thereby *causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety*, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Penal Code § 422 (emphasis added).

[5] Section 422's plain text demonstrates that it requires a threatened use of violent physical force against another person. Specifically, section 422's text requires: (1) a "threat[ ]

to commit a crime which will result in death or great bodily injury," (2) made with "specific intent that the statement . . . be taken as a threat," (3) which conveys "an immediate prospect of execution," (4) thereby causing a victim "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the victim's fear is "reasonabl[e]." *Id.*; *see also People v. Maciel*, 6 Cal. Rptr. 3d 628, 632 (Cal. Ct. App. 2003) (explaining that to prove a violation of section 422, the prosecution must establish these elements). Resting on the plain language of the California statute, we conclude that section 422's elements necessarily include a threatened use of physical force "capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271.

Villavicencio nevertheless argues that section 422 is not categorically a crime of violence under USSG § 2L1.2 because section 422 reaches threats to property.[4] We are not persuaded. A threat to damage property or to commit a crime, without more, cannot meet the subjective- and objective-intent elements required of section 422. *See Maciel*, 6 Cal. Rptr. 3d at 632 (explaining that "[a] violation of . . . section 422 requires the defendant to willfully threaten to kill or seriously injure another person" and that the victim must construe the threat as one to life or limb (alterations omitted)).[5]

Villavicencio relies on *People v. Martinez*, 62 Cal. Rptr. 2d 303 (Cal. Ct. App. 1997), which he argues carries his burden under *Duenas-Alvarez* of showing a case in which a Califor-

---

[4]In light of Villavicencio's present contention, our conclusion in *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003), that section 422 is categorically a crime of violence under 18 U.S.C. § 16(a) is not dispositive here because § 16(a), unlike § 2L1.2, defines crimes of violence to include threats of force against property.

[5]Villavicencio's reliance on *United States v. Narvaez-Gomez*, 489 F.3d 970 (9th Cir. 2007), is misplaced. Unlike the crime of discharging a firearm at issue there, which requires only reckless conduct, *see id.* at 977, section 422 requires a "willful[ ]" threat.

nia court convicted a defendant under section 422 for threatening property. Villavicencio misconstrues *Martinez*. Although the *Martinez* defendant actually *did* damage property after making threats to blow up his girlfriend's car and home, the court rested its decision on its conclusion that these threats were designed to, and did, cause the victims to fear for their lives and safety. *See id*. at 304-05, 308-09. Where there is a threat to destroy property in a way that can likely cause death or serious physical injury to a person, such as a threat to blow up a person's home or business during a time when the person might be there, such a threat is not merely a threat to destroy property—it is a threat to injure the person who may be present when the attack is made on the property. Some threats to property will not raise issues of threatened harm to individuals, but here the statute specifically requires that there is a threatened result of death or great bodily injury.[6]

**[6]** Evaluating the plain text of section 422, and having found no case where the application of section 422 was inconsistent with the generic definition of a crime of violence, we hold that a conviction for making a criminal threat under section 422 is categorically a conviction for a crime of violence under USSG § 2L1.2.

## V

Villavicencio's conviction is **AFFIRMED**, his sentence is **VACATED**, and the matter is **REMANDED** for resentencing consistent with this opinion.

---

[6]That section 422 embraces threats to kill or injure a person *indirectly* through destruction of property is not inconsistent with section 422 being a categorical crime of violence because the force threatened need not be force administered directly by the hands of the perpetrator. *See United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003) (holding that the district court did not plainly err by concluding that a threat of anthrax poisoning satisfies 18 U.S.C. § 16(a)'s threatened use of physical force requirement because "the bacteria's physical effect on the body is no less violently forceful than the effect of a kick or blow").